## DeMayo v. Schmitt

*Francis Ferrara* and *Garland Cherry*, for plaintiffs.

*Joseph Manta* and *Harold Mancus,* for defendants.

KLEIN, *J.,* December 28, 1989 — In April 1948, Agnes Babcock was pregnant with her daughter,

Mary Ellen, who by marriage later became Mary Ellen DeMayo. While carrying Mary Ellen in utero, Agnes Babcock allegedly ingested diethylstilbestrol (DES). In December 1977, Mary Ellen DeMayo became pregnant with the minor plaintiff, Alena DeMayo. In this action, it is claimed that the grandchild, Alena DeMayo, suffered injuries caused by the ingestion of DES by her grandmother, Agnes Babcock.

Defendants challenge the right of *grandchild* Alena DeMayo to bring an action for injuries and deformities allegedly caused by a drug administered to her *grandmother*. In essence, defendants claim that there should be no recovery for a "third-generation" injury.

This court has granted the motion for summary judgment in part and denied it in part.

The motion for summary judgment is denied, and recovery will be allowed if the plaintiff can show:

(1) The manufacturer acted negligently in placing the product on the market without sufficiently testing for efficacy and risk; and

(2) The manufacturer knew or should have known that there would be a risk of injury to the reproductive system of the second generation. Knowledge of the risk of injury to the *reproductive system* of the second generation creates a foreseeable risk of deformities in the third generation.

The motion for summary judgment is granted as to some of the counts, as follows:

(1) Strict liability will not apply to a third-generation injury. Because of the remoteness and lack of foreseeability of an injury to the third generation, under a balancing test, it is unfair to place such a burden on a manufacturer that is free from fault.

(2) For plaintiff to recover for a third-generation

injury under a negligence theory, he or she must show more than that there was a risk of general injury to the second generation. Plaintiffs must also show that defendants should have known of the specific risk of third-generation injury because of evidence of risk of injury to the *reproductive system* of the second-generation child.

In general, the Pennsylvania Supreme Court has determined that when a product causes injury absent any negligence, one of two innocent parties must suffer, the victim or the manufacturer. Between consumers on the one hand and manufacturers or suppliers on the other, Pennsylvania has determined that because of the increasingly complex nature of a national market economy, "[those] who are engaged in the business of selling or supplying a product may be said to have undertaken and assumed a special responsibility toward the consuming public and are in a position to spread the risk of defective products." *Berkebile v. Brantley Helicopter Corp.,* 462 Pa. 83, 93, 337 A.2d 893, 898 (1975).

At the same time, not everyone who is injured can get money from someone else. Not every wrong can have a remedy. "[A]t some point, along the causal chain, the passage of time and the span of distance mandate a cut-off point for liability." *Massagatti v. Everingham by Everingham,* 512 Pa. 265, 273, 516 A.2d 672, 676 (1986). Life has its risks, and ability to pay on the part of a defendant does not automatically mean that a verdict should be entered against it.

To reach a just result, the courts must apply a balancing test and use common sense to arrive at a public policy consistent with the needs of the community.

In the instant circumstance, if the manufactur-

ers, using due care, could not have known that ingestion of DES causes *genital-tract* injury to daughters of DES mothers, they could not have anticipated defects in the third generation, or grandchildren of the women that took the drug. Even if there were other problems with offspring of DES mothers, problems in the third generation should be considered so remote as to be unforeseeable. For example, if there were a tendency of children of DES mothers to develop kidney cancer, this would not indicate any kind of problems in the third generation.

At the same time, if proper animal tests or other research would have shown *genital* defects in offspring of DES mothers, it would not be unforeseeable that those genital problems could result in premature births and other defects in the grandchildren.

With respect to the claim under section 402A of the Restatement of Torts, liability should stop with the second generation. Again, there must be a balancing test. It may be proper in some circumstances to impose liability on an innocent manufacturer on a "share the risk" theory. At the same time, there must be some line drawn to allow manufacturers freedom to experiment with new products without risking bankruptcy if there is some adverse result they could not have foreseen even if exercising all due care. The offspring of those exposed to the product seems an appropriate place to stop.

It should be noted that establishing an arbitrary limit for section 402A liability is not new to the area of pharmaceutical products. Comment K of section 402A of the Restatement of Torts points out that because of the desire to bring new products to the market that could save lives, one does not want to place such an onerous burden on manufacturers

that research will be discouraged. "The seller of such [unavoidably unsafe] products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product...." Restatement (Second) of Torts, §402A, comment K.

Therefore, eliminating strict liability for third-generation injuries has only a minor practical effect in the DES litigation. It appears the only way plaintiffs get to a strict-liability argument is if they can show that the manufacturers did not reasonably test for *efficacy*. If the product did not work to preserve pregnancies, then the protection of comment K may not be available for the manufacturers. However, if the manufacturers were negligent in not properly testing for efficacy, they probably also were negligent in not testing for safety, so there is no need for plaintiffs to rely on section 402A of the Restatement. The elimination of strict liability for third-generation injuries would only make a difference if the manufacturers were *negligent* in not reasonably testing for efficacy but *not negligent* in testing for safety. Then, absent this ruling, there could be recovery under section 402A but not under negligence.

It is recognized that, to some extent, the rules laid down in this case are not derived from legal theory as much as from the factual situation of the litigation and a determination of public policy. However, this is the way the common law has evolved. Courts have always recognized that imposing legal liability on a party must end at some point. That end point is usually determined by considering common-law

principles in light of social policy concerns. Although throughout history "public policy" changes as the public alters its expectations of acceptable behavior, the key legal inquiries consistently have been *proximity* — closeness in time and place — and foreseeability. (See *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).)

There is always a balancing test. For example, if a manufacturer makes millions of automobile tires, it is foreseeable that one of those tires might explode causing injury, even if all care was taken. Although the manufacturer could not anticipate *which* tire would explode, they could anticipate that *some* tire could explode. Therefore, it does not seem unjust to ask the manufacturers to bear the risk rather than the injured party.

It could be assumed that giving drugs to a mother to prevent a miscarriage could result in some injury to the offspring, so it does not shock the conscience to impose liability for injury to the *child*. However, absent some other factor, there is nothing inherent in administering a drug to prevent miscarriages that gives any indication of a risk to later *grandchildren*. That is so remote that it should not be considered foreseeable, certainly for imposing strict liability.

While the determination of what is and what is not proximate and what is or is not foreseeable of necessity is somewhat arbitrary, establishing a cutoff as a matter of public policy is familiar to Pennsylvania law.

In Pennsylvania, cases which involve the "zone of danger" concept illustrate both how law evolves as society's perceptions change and the unchanging, continuing importance of the foreseeability principle in tort law. These cases typically involve claims

for negligent infliction of emotional distress by parents or other close relatives who witness a child or loved one's death.

Initially, Pennsylvania denied recovery for damages in tort resulting from emotional injuries unless the distress was accompanied by physical impact. *Knaub v. Gotwalt,* 422 Pa. 267, 220 A.2d 646 (1966).

In 1970 the court abandoned the "impact rule" and adopted the "zone of danger" theory, allowing recovery for emotional injury to someone "in the zone of danger" when a close relative was struck. *Neiderman v. Brosky,* 436 Pa. 401, 403, 261 A.2d 84, 85 (1970). The court then expanded the zone of danger theory to include recovery for psychological damages where a mother *witnessed* her son's accident although beyond the zone of danger. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). "We are . . . satisfied that by the proper application of the tort concept of foreseeability the area of liability may be reasonably circumscribed." *Sinn v. Burd,* 486 Pa. at 173, 404 A.2d at 686.

In *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 459 (1981) an equally divided court affirmed the Superior Court position denying recovery for a father who first arrived at the accident scene after his son had been taken to the hospital. The father was allegedly so depressed after being with his son at the hospital in the five days before the son died that he committed suicide. Justice Wilkinson, joined by Justice Roberts, acknowledged that the trauma of a parent who hears of his or her child's accident is no less than one who witnesses the event, and the distinction being made was artificial. He noted that the relief, if granted, would result in greatly expanded liability, and specifically declined to abandon wholesale the zone of danger concept, saying,

"We are unwilling to ... enter a realm of uncertainty with no workable guidelines for recovery." *Yandrich v. Radic*, 495 Pa. at 248, 433 A.2d at 461. Justice (now Chief Justice) Nix reached the same result following "the long-standing tradition of denial of recovery for grief." *Yandrich v. Radic*, 495 Pa. at 251, 433 A.2d at 463.

Chief Justice Nix was in the majority in *Massagatti v. Everingham by Everingham*, 512 Pa. 265. 516 A.2d 672 (1986). In that case, recovery was denied for a mother who arrived at the scene of an accident and observed her daughter injured in the street.

As was noted, there is a special rule dealing with new pharmaceutical products. Comment K of section 402A of the Restatement of Torts points out that because of the desire to bring new products to the market that could save lives, one does not want to place such an onerous burden on manufacturers that research will be discouraged. Therefore, especially in the situation involving drugs, it is not unusual for the law to use practical considerations to place limits on imposing strict liability.

## CONCLUSION

At some point, public policy mandates that a risk must be considered too remote, and even if someone is injured by a tort-feasor, the court will not allow recovery. Of necessity, the dividing line is sometimes arbitrarily and not logically drawn. However, as Justice Oliver Wendell Holmes wrote in *The Common Law*, "The life of the law has been experience, not logic." Likewise, in his famous dissent in *Palsgraf, supra,* Justice Andrews wrote: "[Sometimes] because of convenience, of public policy [and] a rough sense of justice, the law arbitrarily

declines to trace a series of events beyond a certain point. This is not logic. It is practical politics." Quoted in *Sinn v. Burd,* 486 Pa. at 166, 404 A.2d at 682.

Common sense must therefore be applied to difficult cases. As Justice Andrews wrote in *Palsgraf, supra,* "There is in truth little to guide us other than common sense." In this situation, the most reasonable way to approach the problem is to allow recovery for the third generation if the manufacturer negligently failed to learn of genital-tract injuries to the second generation; but to deny recovery if all that should have been discovered were general injuries to the second generation; and to deny recovery for third-generation injuries on a strict liability theory.

## ORDER

Defendants' motion for summary judgment is granted in part and denied in part.

The motion for summary judgment is denied, and recovery will be allowed if plaintiff can show:

(1) The manufacturer acted negligently in placing the product on the market without sufficiently testing for efficacy and risk; and

(2) The manufacturer knew or should have known that there would be a risk of injury to the reproductive system of the second generation. Knowledge of the risk of injury to the *reproductive system* of the second generation creates a foreseeable risk of deformities in the third generation.

The motion for summary judgment is granted as to some of the counts as follows:

(1) Strict liability will not apply to a third-generation injury. Because of the remoteness and lack of foreseeability of an injury to the third gen-

eration, under a balancing *test, it is* unfair to place such a burden on a manufacturer that is free from fault.

(2) For plaintiff to recover from a third-generation injury under a negligence theory, he or she must show more than that there was a risk of general injury to the second generation. Plaintiff must also show that defendants should have known of the specific risk of third-generation injury because of evidence of risk of injury to the reproductive system of the second-generation child.